IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTINE SHEPPARD and<br>KENNETH SHEPPARD, | ) | CIV. NO. 16-00043 JMS-RLP |
| | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| Plaintiffs, | ) | MOTION TO DISMISS |
| | ) | |
| vs. | ) | |
| | ) | |
| MONSANTO COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

Defendant Monsanto Company ("Defendant" or "Monsanto") moves

pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the February 2,

2016 Complaint filed by Plaintiffs Christine and Kenneth Sheppard (collectively

"Plaintiffs").  Doc. No. 10.[1]  Monsanto argues that (1) Plaintiffs' claims are barred

by the applicable statute of limitations, (2) the Complaint's "warnings-based"

claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act

---

[1] Monsanto has also moved to dismiss a related action, *Johnson v. Monsanto Co.*, Civ.
No. 16-00075 JMS-RLP, making substantively-identical arguments as to Plaintiff Aaron
Johnson's Complaint in that case.  The court heard oral argument on the two Motions together,
and issues a separate Order in *Johnson* that incorporates the reasoning in this Order.  The present
case (*Sheppard*) has an additional issue regarding the statute of limitations that is not at issue in
*Johnson*.

("FIFRA"), 7 U.S.C. § 136 *et seq*.; and (3) the Complaint's "non-warnings-based" claims fail under comments j and k of the Restatement (Second) of Torts § 402A. Based on the following, Monsanto's Motion is DENIED.

## II. <u>BACKGROUND</u>

### A.   **Factual Background**

For purposes of this Rule 12(b)(6) motion, the court accepts as true the factual allegations of the Complaint, and draws all reasonable inferences in favor of the nonmoving party. *See, e.g.*, *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). The court recites only the allegations necessary to explain its rulings.

Christine Sheppard and her husband Kenneth Sheppard currently live in California. Doc. No. 1, Compl. ¶ 13. Before that, Christine Sheppard owned and operated a coffee farm in Hawaii. *Id.* From approximately 1995 until 2004, she used and was exposed to a weed-killing herbicide commonly known as Roundup on her coffee farm. *Id.* ¶¶ 13, 66. Roundup is a Monsanto product containing glyphosate, a chemical that Monsanto discovered in 1970 and has used in Roundup since 1974. *Id.* ¶ 1. Monsanto has "repeatedly proclaimed and continues to proclaim to the world, and particularly to United States consumers, that glyphosate-based herbicides, including Roundup, create no unreasonable risks

to human health or to the environment." *Id*. ¶ 8; *see also id.* at 18, 37-38.

In 2003, Christine Sheppard was diagnosed with non-Hodgkin lymphoma. As a result, she sold the coffee farm, and moved to California for treatment. Although her cancer is apparently in remission, "she continues to undergo treatment and surveillance for her lymphoma." *Id*. ¶ 68. Plaintiffs allege that her cancer was caused by exposure to Roundup and its ingredient glyphosate; and by Monsanto's actions or omissions in designing, failing to warn, misrepresenting, and/or breaching warranties regarding Roundup. *Id.* ¶¶ 85, 87, 109, 125, 141, 145.

Specifically, the Complaint alleges that glyphosate is carcinogenic, and unsafe and toxic to humans. *Id.* ¶¶ 6-7. In particular, the Complaint points to a March 20, 2015 evaluation by the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), and a July 29, 2015 monograph of an IARC Working Group relating to glyphosate. *Id.* ¶ 4. The IARC Working Group classified glyphosate as a "Group 2A herbicide," which means it is "probably carcinogenic" to humans. *Id.* ¶¶ 6, 45. The IARC concluded that the cancers most associated with glyphosate exposure include non-Hodgkin lymphoma and other haematopoietic cancers. *Id.* ¶ 6. The Complaint contends that Monsanto knew or should have known that Roundup is unsafe, but Monsanto

still continues to market and misrepresent its safety -- it alleges that "Monsanto championed falsified data and attacked legitimate studies that revealed its dangers [and] led a prolonged campaign of misinformation to convince government agencies, farmers and the general population that Roundup was safe." *Id*. ¶ 18; *see also*, *e.g.*, *id*. ¶¶ 27-33; 37-39.  According to the Complaint, "Monsanto has known for decades that it falsely advertises the safety of Roundup." *Id.* at 12. Roundup is now banned in several countries. *Id.* ¶¶ 60-65.

The Complaint alleges six Counts, summarized as follows:

Count One ("Strict Liability (Design Defect)") alleges in a variety of ways that Roundup is defective and unreasonably dangerous to consumers, and that Monsanto at all relevant times "designed, researched, developed, manufactured, produced, tested, assembled, advertised, promoted, marketed, sold, and distributed" the Roundup product used by Christine Sheppard. *Id*. ¶ 71.  It alleges that Roundup is "defective in design and formulation" and "unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate." *Id*. ¶ 74.  Monsanto knew, or should have known, of Roundup's defective design and that its use could result in cancer. *Id*. ¶¶ 76, 77. Plaintiffs contend that such defects were substantial and contributing factors in causing Christine Sheppard's cancer. *Id*. ¶¶ 85, 87.

Count Two ("Strict Liability (Failure to Warn)") contends that Roundup was defective and unreasonably dangerous because it lacked "adequate warnings or instructions concerning the dangerous characteristics of Roundup and specifically, the active ingredient glyphosate." *Id*. ¶ 91.  Monsanto "had a continuing duty to warn the Plaintiff of the dangers associated with Roundup use and exposure" and "knew or should have known of the unreasonable risks of harm associated with" its use. *Id*. ¶¶ 93, 94.  Monsanto "wrongfully concealed information concerning the dangerous nature of Roundup and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup and glyphosate." *Id*. ¶ 97.  These defects in Roundup's warning were allegedly a substantial and contributing cause of Christine Sheppard's cancer. *Id.* ¶ 107-109.

Count Three ("Negligence") alleges that Monsanto breached a duty to exercise reasonable care in the "design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution" of Roundup, and had a duty of care that included "providing accurate, true, and correct information concerning the risks of using Roundup and appropriate, complete, and accurate warnings concerning the adverse effects of exposure to Roundup, and, in particular, its active ingredient glyphosate." *Id*. ¶ 114.  Among other allegations,

it alleges that Monsanto, knew or should have known of the carcinogenic properties of the chemical glyphosate, and breached a duty of care in failing to prevent or adequately warn of its characteristics. *Id.* ¶¶ 118-121.  These breaches proximately caused damages to one or both Plaintiffs (it is unclear whether both Plaintiffs or only Christine Sheppard bring this claim). *Id.* ¶ 123.

Counts Four and Five ("Breach of Implied Warranties" and "Breach of Express Warranties") allege that Monsanto warranted to consumers and Christine Sheppard that Roundup was merchantable, and safe and fit for the use for which it was intended, and that Monsanto's failure to disclose Roundup's dangerous propensities constituted a breach of implicit and express warranties. *Id.* ¶¶ 130, 137, 139, 145.  Count Four alleges that Christine Sheppard "is the intended third-party beneficiar[y] of implied warranties made by Defendant to the purchasers of its horticultural herbicides, and as such Plaintiff is entitled to assert this claim." *Id.* ¶ 133.  It further alleges that "[a]s a direct and proximate result of Defendant's wrongful acts and omissions Plaintiff has suffered severe and permanent physical and emotional injuries.  Plaintiff has endured pain and suffering, ha[s] suffered economic loss (including expenses for medical care and treatment) and will continue to incur these expenses in the future." *Id.* ¶ 141.

Finally, Count Six ("Loss of Consortium") alleges that Kenneth

Sheppard "suffered the loss and/or impairment of [Christine Sheppard's] ability to perform services as a wife, because of her injuries" as a direct and proximate result of Monsanto's wrongful acts and omissions.  *Id.* ¶ 148.

## B.    Procedural Background

Plaintiffs filed this action on February 2, 2016, based on diversity of citizenship.  *Id.* ¶ 9.  Plaintiffs currently reside in California; Monsanto is a Delaware Corporation with its headquarters and principal place of business in St. Louis, Missouri.  *Id.* ¶¶ 13, 14.  Monsanto filed its Motion to Dismiss on February 24, 2016. Doc. No. 10.  Plaintiffs filed their Opposition on April 4, 2016, Doc. No. 19, and Monsanto filed its Reply on April 11, 2016.  Notices of Supplemental Authority were filed on April 10, 2016, May 3, 2016, and May 25, 2016.  Doc. Nos. 20, 24, 25.  The court held a hearing on May 19, 2016.  Doc. No. 26.

## III.  <u>STANDARDS OF REVIEW</u>

## A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica*

*Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Although a plaintiff need not identify the legal theories that are the basis of a pleading, *see Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 346 (2014) (per curiam), a plaintiff must nonetheless allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Id*. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to

8

require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## B.     Statute of Limitations

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute of limitations is apparent on the face of the complaint.'"  *U.S. ex rel. Air Control Tech. v. Pre Con Indus., Inc*., 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (brackets omitted)).  "However, a district court may do so 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  *Cervantes v. Countrywide Home Loans, Inc*., 656 F.3d 1034, 1045 (9th Cir. 2011) (citation and internal quotation marks omitted).  In making these determinations, the court accepts as true all allegations in the complaint, except for legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

///

///

# IV.  **DISCUSSION**

A.  **The Complaint is not Time-Barred**

1.  *Tort claims*

Monsanto argues, at this motion-to-dismiss stage, that Plaintiffs' tort claims accrued in 2009 or earlier and are thus time-barred.  The court disagrees.

"In diversity actions, federal courts generally apply state statutes related to the commencement and tolling of statutes of limitations."  *Aana v. Pioneer Hi-Bred Int'l, Inc.*, 965 F. Supp. 2d 1157, 1178-79 (D. Haw. 2013) (citations omitted).  The applicable statute of limitations for Plaintiffs' personal injury tort claims is two years as set forth in Hawaii Revised Statutes ("HRS") § 657-7.  *See Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc.*, 115 Haw. 232, 276-77, 167 P.3d 225, 269-70 (2007); *In re Haw. Fed. Asbestos Cases*, 854 F. Supp. 702, 707 (D. Haw. 1994) (applying § 657-7 to strict products liability action).

Under Hawaii law, a cause of action for personal injury does not accrue until a plaintiff "discovers or should have discovered the negligent act, the damages, and the causal connection between the former and the latter."  *Yamaguchi v. Queen's Med. Ctr.*, 65 Haw. 84, 90, 648 P.2d 325, 693-94 (1982).  *See also, e.g.*, *Hays v. City & Cty. of Honolulu*, 81 Haw. 391, 396, 917 P.2d 718,

723 (1996) (reiterating that the period "commences to run when plaintiff

discovers, or through the use of reasonable diligence should have discovered,

(1) the damage; (2) the violation of the duty; and (3) the causal connection

between the violation of the duty and the damage") (quoting *Jacoby v. Kaiser*

*Found. Hosp.*, 1 Haw.App. 519, 525, 622 P.2d 613, 617 (1981)).

Monsanto relies on an editorial that Sheppard apparently wrote and

published in an August 2009 newsletter of the Kona Coffee Farmers Association.

The editorial stated, in part:

> In 2003, I was diagnosed with NHL (non-Hodgkins
> lymphoma), a serious blood cancer with very low
> survival rates. . . .  [L]ike all others who go through life-
> threatening cancer, I asked "why me"? . . .  Having never
> been near or lived near any [chemical] industry, and
> living on a Kona coffee farm that we were diligently
> turning organic, we could not find a link.
>
> Then, last year, I found a report from Sweden that linked
> [Monsanto's] Roundup with increased incidence of
> NHL.  I bookmarked the report, but when I had time to
> get back to it, it had been removed from the web, rumor
> says under pressure from chemical giants.
> . . . .
> Was this my link?  We cannot prove it, but we will never
> use Roundup, and never eat any grain or bean that is not
> organic (i.e.: cannot be GMO).

Doc. No. 11-2, Def.'s Ex. A at 2.  Monsanto argues that Christine Sheppard's

editorial demonstrates that she knew she had a potential tort claim against

Monsanto no later than August 2009, and because suit was not filed until February 2, 2016, the tort claims are time-barred.

Monsanto invokes a "suspicion of wrongdoing" theory -- the statute of limitations is triggered under the discovery rule when a plaintiff has a "suspicion of wrongdoing." *See Moddha Interactive, Inc. v. Philips Electronic N. Am. Corp.*, 92 F. Supp. 3d 982, 993 (D. Haw. 2015) (quoting *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 926 (Cal. 1988)). *See also Platt Elec. Supply, Inc. v. EOFF Elec., Inc*., 522 F.3d 1049, 1054 (9th Cir. 2008) ("'So long as there is a reasonable ground for suspicion, the plaintiff must go out and find the facts; she cannot wait for the facts to find her.'") (quoting *Slovensky v. Friedman*, 49 Cal. Rptr. 3d 60, 68 (Cal. App. 2006)).

Plaintiffs respond by contesting whether a mere suspicion is enough to trigger a limitations period, and, in any event, proffer evidence that Christine Sheppard had insufficient knowledge in 2009 of a causal connection between her lymphoma and Roundup. Plaintiffs point instead to the Complaint's allegations regarding the March/July 2015 IARC Working Group conclusion (that glyphosate is a probable human carcinogen) as providing the necessary basis for bringing suit. Plaintiffs also contend that, in medical causation situations, a diagnosis by a medical professional is needed for a cause of action to accrue. *See*, *e.g.*, *Nelson v.*

*Sandoz Pharm. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002) ("Generally. . .  the

plaintiff's suspicion, standing alone, about the source of her injury is insufficient

to trigger the onset of the limitations period.  In contrast, the limitations period

will begin to run when a physician suggests there is a 'reasonable possibility, if

not a probability' that a specific product caused the plaintiff's injury.") (citations

omitted) (applying Indiana's discovery rule, which is similar to Hawaii's).

       This concept regarding the need for a medical diagnosis has evolved

in some jurisdictions -- for example, the Seventh Circuit has more recently held in

a medical malpractice case brought under the Federal Tort Claims Act that "a

plaintiff's medical malpractice claim against the federal government accrues when

either (1) the individual becomes subjectively aware of the government's

involvement in the injury, or (2) the individual acquires information that would

prompt a reasonable person to inquire further into a potential government-related

cause of the injury, whichever happens first."  *Wallace v. United States*, 758 F.3d

861, 866 (7th Cir. 2014) (finding accrual to be a question of fact).  *See also*

*Bayless v. United States*, 767 F.3d 958, 970 (10th Cir. 2014) ("'[C]ompelling' or

'certain' proof of a cause is not a requirement before accrual may begin.")

(citations omitted).

       And, although some Hawaii caselaw discusses a "suspicion of

wrongdoing" theory, it does so asking whether a plaintiff exercised reasonable diligence in discovering her cause of action.  *See Newtown Meadows*, 115 Haw. at 280, 167 P.3d at 273.  In short, under Hawaii law, "[t]he ultimate question therefore is whether [the] plaintiffs exercised reasonable diligence in discovering the negligent cause of their injuries."  *Id*. (quoting *Leaf v. City of San Mateo*, 163 Cal. Rptr. 711, 716-17 (Cal. App. 1980)).  *See also Hays*, 81 Haw. at 396, 917 P.2d at 723 (reiterating that the period "commences to run when plaintiff discovers, *or through the use of reasonable diligence should have discovered*, (1) the damage; (2) th violation of the duty; and (3) the causal connection between the violation of the duty and the damage") (emphasis added).

Initially, Plaintiffs object to the court taking judicial notice of the August 2009 newsletter, although they do not otherwise contest its contents or that Christine Sheppard wrote the editorial.  Instead, Plaintiffs proffer a declaration of Christine Sheppard stating among other things that, after she "bookmarked" an online link to a European news article in 2008 (which was later deleted), she asked several of her physicians about a potential link, and was told that they were unaware of such an association.  Doc. No. 19-1, C. Sheppard Decl. ¶ 10.  She sought and retained counsel only after March 2015 when the WHO designated glyphosate as a probable human carcinogen.  *Id.* ¶ 11.

14

Monsanto's Motion relies on evidence.  But this is a motion to dismiss.  Even assuming the court could take judicial notice of the editorial, it is inappropriate to address such disputed evidence (including Christine Sheppard's declaration) on an affirmative defense at this stage.  *See, e.g.*, *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.") (citation omitted).  Accordingly, the court denies Monsanto's Motion on this basis -- it is not apparent on the face of the Complaint that the statute of limitations has run, especially considering the allegations regarding the 2015 designation by the WHO.  *See, e.g.*, *Huynh*, 465 F.3d at 997.

Alternatively, if the court considers the newsletter and Christine Sheppard's statements in the editorial, as well as her declaration submitted in response to Monsanto's Motion, the court -- applying summary judgment standards -- would deny the Motion because disputes of material fact remain as to her diligence and discovery of the cause of action.  *See, e.g.*, *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) ("If the [statute of limitations] defense does not appear on the face of the complaint and the trial court is willing to accept matters outside of the pleadings, the defense can still be raised by a motion to

15

dismiss accompanied by affidavits.  Rule 12(b)(6) . . . permits the court to consider a motion to dismiss accompanied by affidavits as a motion for summary judgment.") (internal citation omitted); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (finding error in taking judicial notice of disputed facts to grant motion to dismiss without converting it to a summary judgment motion); *Newtown Meadows*, 115 Haw. at 280, 167 P.3d at 273 ("[S]uch question should be resolved by the trier of fact.").

### 2.    *Breach of Warranty claims*

Similarly, the court cannot determine at this stage whether a four year statute of limitations under HRS § 490:2-725 has run on Plaintiffs' breach of warranty claims.  Plaintiffs allege sufficient facts that could constitute fraudulent concealment so as to toll the limitations period.  If Monsanto fraudulently concealed information related to causation, it would have concealed an element of Hawaii's discovery rule (i.e., that the harm was caused by Roundup).  Assuming the truth of the Complaint's allegations, the warranty claims are not barred by the statute of limitations.  *See, e.g.*, *Windward Aviation, Inc. v. Rolls-Royce Corp.*, 2011 WL 2670180, at *12 (D. Haw. July 6, 2011) ("Plaintiffs' implied warranty claims against Rolls-Royce remain actionable because there is a 'possibility that [P]laintiffs could show lulling' on Rolls Royce's part, which 'is sufficient to avoid

summary disposition on [Defendants'] statutes of limitation defenses.'") (quoting

*Cunha v. Ward Foods, Inc.*, 501 F. Supp. 830, 836 (D. Haw. 1980)).  "A plaintiff

can show that equitable tolling based on 'lulling' is appropriate where 'it appears

that [a defendant] has done anything that would tend to lull the plaintiff into

inaction, and thereby permit the limitation prescribed by the statute to run against

him.'"  *Id.* (quoting *Mauian Hotel, Inc. v. Maui Pineapple Co.*, 52 Haw. 582, 570-

71, 481 P.2d 310, 315 (1971) (other citation omitted)).

## B.    FIFRA Preemption

Next, Monsanto seeks to dismiss the Complaint's "warnings-based"

claims, arguing that FIFRA preempts them.[2]  The court disagrees.

---

[2]  The "warnings-based" claims include Count Two (strict products liability for failure to warn); and aspects of Count Three (negligence), Count Four (implied warranty), and Count Five (express warranty) to the extent they allege defects, or wrongful actions (or inactions) regarding warnings as to Roundup's safety.  Monsanto does not seek to dismiss the "non warnings-based claim" -- Count One (strict products liability for design defect) -- on a preemption theory.  Rather, Monsanto seeks to dismiss Count One by applying comments j and k of the Restatement (Second) of Torts § 402A.

In this regard, the Hawaii Supreme Court set forth Hawaii's standard for strict products liability claims as follows:

> [O]ne who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for physical harm caused by the defective product to the ultimate user or consumer, or to his property, if (a) the seller or lessor is engaged in the business of selling or leasing such product, and (b) the product is expected to and does reach the user or consumer without substantial change in its condition after it is sold or leased.

*Dolan v. Hilo Med. Ctr.*, 127 Haw. 325, 339, 278 P.3d 382, 396 (Haw. App. 2012) (quoting *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 75, 470 P.2d 240, 243 (1970) (emphasis omitted)).  Under Hawaii law,

> [i]n order to make out a *prima facie* case of strict products liability, a plaintiff

(continued...)

Under FIFRA, a State "shall not impose . . . any requirements for labeling or packaging in addition to or different from those required under" FIFRA itself.  7 U.S.C. § 136v(b) (emphasis added).[3]  "[A] state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions."  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447 (2005).  And FIFRA registration "does not provide a defense to the violation of the statute."  7 U.S.C. § 136a(f)(2).

Plaintiffs' warnings-based claims are fully consistent with FIFRA's

---

[2](...continued)
must "prove (1) a defect in the product which rendered it unreasonably dangerous for its intended or reasonably foreseeable use; and (2) a causal connection between the defect and the plaintiff's injuries."  "A product may be defective under any one of three general theories: defective manufacture; defective design; or insufficient warning."

*Torres v. Nw. Engineering Co*, 86 Haw. 383, 397, 949 P.2d 1004, 1018 (Haw. App. 1997) (quoting *Tabieros v. Clark Equip*., Co., 85 Haw. 336, 353, 354, 944 P.2d 1279, 1296, 1298 (1997)).

[3]  Title 7 U.S.C. § 136v provides in part:

(a) In general

> A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

> Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

labeling requirements, and thus are not preempted.  The Complaint is not attempting to *impose* a different warning label, such as in *Marzaie v. Monsanto Co.*, 2016 WL 146421 (C.D. Cal. Jan. 12, 2016), in which the plaintiff sought injunctive relief requiring Monsanto to alter its label.  *Id.* at *2.  Rather, Plaintiffs contend that Monsanto's existing label (or the label used from 1995 to 2004) is "misbranded" because it misrepresents Roundup's safety, and is an inadequate warning.  *Bates*, 544 U.S. at 438.  A pesticide is "misbranded" under FIFRA if its label is "false or misleading in any particular," or omits necessary warnings or statements.  7 U.S.C. §§ 136(q)(1)(A), (F), (G).[4]  The product is "defective" under either theory.  *Cf. Ansagay v. Dow Agrosciences LLC*,  2015 WL 9582710, at *11

---

[4] FIFRA defines "misbranded" as follows:

(1) A pesticide is misbranded if--

    (A) its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients which is false or misleading in any particular;
    . . . .
    (F) the labeling accompanying it does not contain directions for use which are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under section 136a(d) of this title, are adequate to protect health and the environment;

    (G) the label does not contain a warning or caution statement which may be necessary and if complied with, together with any requirements imposed under section 136a(d) of this title, is adequate to protect health and the environment;

7 U.S.C. § 136(q).

(D. Haw. Dec. 29, 2015) ("These [negligence] claims are not preempted under

*Bates* because they do not impose a labeling or packaging requirement.  Instead,

they are based on the idea that [the pesticide] Dursban TC itself was unsafe.")

(citing *Bates*, 544 U.S. at 444).

That is, because Plaintiffs essentially allege that Roundup is

"misbranded" in violation of FIFRA and thus in violation of Hawaii law,

Plaintiffs' failure-to-warn claims are not preempted.  *See Bates*, 544 U.S. at 454

("[A] manufacturer should not be held liable under a state labeling requirement

subject to § 136v(b) unless the manufacturer is also liable for misbranding as

defined by FIFRA.").  In particular, Count Two alleges that Monsanto "knew or

should have known that [Roundup] created significant risks of serious boidly harm

to a consumers," and "failed to adequately warn consumers  . . . of the risks of

exposure to its products."  Doc. No. 1, Compl. ¶ 97.  Monsanto has allegedly

"wrongfully concealed information concerning the dangerous nature of Roundup

and its active ingredient glyphosate, and further made false and/or misleading

statements concerning the safety of Roundup and glyphosate."  *Id*.  Allegedly,

"[t]he information that [Monsanto] did provide or communicate failed to contain

relevant warnings, hazards, and precautions that would have enabled horticultural

worker such as [Christine Sheppard] to utilize the products safely and with

adequate protection." *Id*. ¶ 103. "Instead, [Monsanto] disseminated information that was inaccurate, false, and misleading[.]" *Id*. *See also, e.g.*, *id*. ¶¶ 118, 119, 120h, 120j, 120l.

Federal law does not prevent a state from providing a damages remedy for violations of federal law. *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 757 (9th Cir. 2015); *cf. also Beavers-Gabriel v. Medtronic, Inc.*, 15 F. Supp. 3d 1021, 1031 (D. Haw. 2014) ("The [Medical Device Amendments of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360k(a)] does not, however, 'prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case "parallel," rather than add to, federal requirements.'") (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008)). As to this point, the court agrees with the recent identical rulings of other district courts within the Ninth Circuit. *See Hardeman v. Monsanto Co.*, ___ F. Supp. 3d ___, 2016 WL 1749680, at *1 (N.D. Cal. Apr. 8, 2016) ("the Supreme Court [in *Bates*] . . . has instead allowed 'private remedies that enforce FIFRA's misbranding requirements[.]'") (quoting *Bates*, 544 U.S. at 451) (internal brackets omitted); *see also Giglio v. Monsanto Co.*, 2016 WL 1722859, at *2 (S.D. Cal. Apr. 29, 2016) ("Plaintiff essentially argues that Defendant failed to warn consumers that Roundup is carcinogenic. Failure to include a warning regarding

known carginogenic properties of a pesticide would constitute misbranding under § 136(q)(G).  Therefore . . . Plaintiff's failure to warn claims . . . are not preempted.").

Monsanto has also filed voluminous material primarily from the U.S. Environmental Protection Agency ("EPA") and largely regarding (1) glyphosate tolerances related to food; and (2) recent assessments evaluating the carcinogenic potential of glyphosate by an EPA Cancer Assessment Review Committee, and by a joint United Nations/WHO meeting on pesticide residues.  Doc. Nos. 11-3 to 11-8; 25-1, 25-2.[5]  The court, however, disagrees with Monsanto that these materials provide a basis for dismissal at this stage (whether as preempted by FIFRA or otherwise).  Although some of these documents might provide some indication that glyphosate "is not likely to be carcinogenic to humans," Doc. No. 25-1, Def.'s

---

[5] For example, a September 27, 2002 EPA document is summarized as follows:

This regulation establishes tolerances for residues of glyphosate in or on animal feed, nongrassgroup; grass, forage, fodder and hay, group and adds the potassium salt of glyphosate to the tolerance expression.  Monsanto Company requested this tolerance under the Federal Food, Drug, and Cosmetic Act, as amended by the Food Quality Protection Act of 1996.

Doc. No. 11-3, Def.'s Ex. B at 1.
Among other responses, Plaintiffs point out that their suit is based on direct industrial exposure to Roundup, not on consumption of food exposed to Roundup.

Ex. 1 at 10,[6] it is unclear how they provide a basis for deciding -- especially when

deciding a motion to dismiss where the court must assume the truth of well-

pleaded factual allegations -- that Roundup cannot be "misbranded," or (more to

the point) that FIFRA preempts Plaintiffs' warnings-based claims.  *See, e.g.*,

*Bates*, 544 U.S. at 541.

　　　　For example, Monsanto proffers an EPA document entitled "R.E.D.

[Reregistration Eligibility Decision] Facts" stating that "[i]n June 1991, EPA

classified glyphosate as a Group E oncogen -- one that shows evidence of non-

carcinogenicity for humans -- based on the lack of convincing evidence of

carcinogenicity in adequate studies."  Doc. No. 11-3, Def.'s Ex. B at 3.  But the

court agrees with the reasoning in *Hardeman* (rejecting Monsanto's argument) that

"it's not clear that [these statements have] the force of law, so it's not clear that

[they have] preemptive effect."  2016 WL 1749680, at *2 (citing *United States v.*

---

　　　　[6]  Monsanto admits that Doc. No. 25-1, an October 1, 2015 "Final Report" of an EPA
committee that was posted on an EPA website in April 2016, was removed from the website by
the EPA in May 2016 because the EPA "has not completed its cancer review of glyphosate."
Doc. No. 25, Def.'s Response at 3-4 n.1; *see also EPA Takes Offline Report That Says
Glyphosate Not Likely Carcinogenic*, 27 Real Estate/Environmental Liability News 18 (Reuters
May 2016) ("The U.S. Environmental Protection Agency has pulled a report offline that
concluded glyphosate is not likely to be carcinogenic to humans, saying the document was
inadvertently published and the agency had not finished its review of the chemical, which is the
key ingredient in Monsanto's herbicides. . . . The EPA took down the report and other documents
on May 2, saying it did so 'because our assessment is not final' . . . .  The agency said the
documents were 'preliminary' and that they were published 'inadvertently.'").

*Mead Corp.*, 533 U.S. 218, 229 (2001) & *Reid v. Johnson & Johnson*, 780 F.3d

952, 964 (9th Cir. 2015)).  That is, the court "declin[es] to afford preemptive effect

to agency actions that do not carry the force of law under *Mead* and its progency."

*Reid*, 780 F.3d at 964.  The court also agrees with *Giglio* that, in the present

context, "a motion to dismiss is not the proper vehicle to delve into the import of

EPA classifications or what EPA representatives have said in the past [about

glyphosate safety], what information they were relying on, and what effect their

statements have on the issues before the Court."  *Giglio*, 2016 WL 1722859, at

\*3.[7]

       Similarly, the warranty claims are not preempted by FIFRA.  *See*

*Bates*, 544 U.S. at 444 *("*Rules that require manufacturers to . . . honor their

express warranties or other contractual commitments plainly do not qualify as

requirements for 'labeling or packaging' . . . [t]hus, petitioners' claims for . . .

breach of express warranty are not pre-empted.").  *See also Ansagay*, 2015 WL

9582710, at \*12 ("FIFRA does not preempt claims for breach of an express

warranty, as express warranty claims are not based on a requirement that a

---

[7] *Giglio* also dismissed as preempted a state law claim that was based on a failure to
warn the EPA of the dangers of Roundup.  2016 WL 1722859, at \*3 (citing *Nathan Kimmel, Inc.
v. DowElanco*, 275 F.3d 1199, 1205-06 (9th Cir. 2002)).  Plaintiffs, however, confirmed at oral
argument that they are not asserting such a (preempted) "fraud-on-the-EPA" claim in this action.
*See* Doc. No. 28, Tr. (May 19, 2016) at 28.

manufacturer label its products in any particular way.").

## C.   Restatement 402A, and Corresponding Comments j and k, Do Not Bar Plaintiffs' Strict Liability Claims

Finally, Monsanto seeks to dismiss the "non-warnings based" claim in Count One, based on comments j and k to the Restatement (Second) of Torts § 402A. It claims that, because the Complaint alleges Roundup is "inherently and unavoidably dangerous," Count One's strict liability design defect claim is barred. Again, the court disagrees.

The Restatement (Second) Torts provides:

§ 402A Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual

25

relation with the seller.

Comment j to Section 402A provides in part that "*[w]here warning is given*, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." (Emphasis added.) And comment k provides in part:

> Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, *and proper warning is given*, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

(Emphasis added.)

Citing comments j and k, Monsanto argues that useful "unavoidably unsafe products" (such as classes of pharmaceuticals) that "carry unavoidable dangers that cannot be designed away without destroying their utility," Doc. No. 10-1, Def.'s Mot. at 21, are not defective as a matter of law if the products bear proper warnings. *Id.* (citing David G. Owen, *The Puzzle of Comment j*, 55

26

Hastings L. J. 1377, 1383-84 (2004)).  That is, Monsanto contends that at most Plaintiffs are limited to bringing warnings-based -- not design defect -- strict liability claims (and they claim those warnings-based are preempted).

Hawaii courts have not specifically adopted this doctrine, even as to prescription drugs.[8]  *See Segovia v. Bristol-Myers Squibb Co.*, 2016 WL 1587220, at *3 (D. Haw. April 19, 2016) ("No Hawaii court, however, has so held [that comment k provides a blanket defense against strict liability design defect claims for prescription drugs], as a matter of law, generally, or in the context of a motion to dismiss, specifically.").  Indeed, *Segovia*, applying Hawaii law, recently denied a motion to dismiss based comments j and k, reasoning that "neither *Larsen [v. Pacesetter Sys., Inc.*, 74 Haw. 1, 837 P.3d 1273 (1992)] nor *Forsyth [v. Eli Lilly*, 1998 WL 35152135 (D. Haw. Jan. 5, 1998)] create a blanket rule of design defect immunity for . . . manufacturers [of prescription drugs], and the Court declines to

---

[8]  Monsanto cites to *Brown v. Superior Court*, 751 P.2d 470, 477 (Cal. 1988) (adopting comment k to new prescription drugs), in support of the proposition that Hawaii courts would apply comments j and k in the herbicide context.  But even if *Brown* is persuasive as to Hawaii law, it has not been applied outside the medical context.  *See Hardeman*, 2016 WL 1749680, at *3.

In this regard, Monsanto argues -- as some counsel occasionally do in this District -- that "Hawaii courts look to California case law for guidance regarding tort issues."  Doc. No. 10-1, Def.'s Mem. at 20 (citations omitted).  To be clear, there is no such blanket rule.  At one time, perhaps soon after Statehood -- over fifty years ago -- Hawaii courts might have looked primarily to California caselaw for guidance on open issues of Hawaii law.  But certainly no more.  Rather, in applying Hawaii law under the *Erie* doctrine, it is a much better practice to look to sources such as Restatements or Model Codes, or to research majority or minority positions from any other jurisdiction, consistent with existing holdings of courts applying Hawaii law.

extend comment k in a fashion that the Hawaii courts themselves have thus far declined to do."  2016 WL 1587220 at *4.

Moreover, almost all jurisdictions that have adopted the doctrine espoused in comments j and k, have narrowly limited it to pharmaceuticals or certain medical devices (and largely on a case-by-case basis).  Hawaii has not extended comments j and k so as to give blanket immunity to manufacturers, much less to herbicides.  *See Segovia,* 2016 WL 1587220, at *3 n.1 (citing cases demonstrating "that courts are split on whether comment k applies categorically to all prescription drugs or only on a case-by-case basis."); *Moss v. Wyeth Inc*., 872 F. Supp. 2d 162, 170 (D. Conn. 2012) ("[T]he majority of courts that have addressed this issue have concluded that policy considerations weigh in favor of interpreting comment k as an affirmative defense that applies on a case-by-case basis.").

Rather, at most, "[t]he better reasoned view is that court should determine on a case-by-case basis whether a product is within the scope of comment k -- that is, examining cost, risk, safety . . . to determine whether it is an 'unavoidably unsafe' product."  *Segovia*, 2016 WL 1587220, at *4.  This is true even in jurisdictions that have extended comment k specifically to pesticides (although not to herbicides).  *See Ruiz-Guzman v. Amvac Chem. Corp*., 7 P.3d

28

795, 804 (Wash. 2000).  And this type of case-by-case analysis is not a determination that could be made at a motion-to-dismiss stage.  *See, e.g.*, *id.* ("Since we hold that the question of whether a pesticide is governed by comment k is to be determined on a product-by-product basis, as opposed to a blanket exemption like that for medical products, it necessarily follows that the trier of fact should determine a pesticide's value to society relative to the harm it causes.").

Further, comments j and k, by their own terms, only apply to shield against strict liability "where warning is given."  Here, however, Plaintiffs allege that *no* warning (or no proper warning) was given.  Therefore, the doctrine provides no basis to dismiss the design defect claims.  *See, e.g.*, *Hardeman*, 2016 WL 1749680, at *3 ("Comment j also provides that 'a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.'  But Hardeman alleges that Roundup did *not* bear the warning it should have, so he's free to allege that Roundup was also 'in defective condition' or 'unreasonably dangerous.'") (quoting comment j); *id.* ("[C]omment k only applies where products 'are properly prepared and marketed, and proper warning is given.'  Once again, Hardeman alleges that Roundup was not properly prepared or marketed, and was not accompanied by proper warning, so -- by its own terms -- comment k doesn't apply."); *see also Giglio*, 2016 WL 1722859, at

*4 (rejecting argument, under California law, that comments j and k preclude non-warnings based design defect strict liability claims regarding glyphosate and Roundup).  And under Hawaii law, *Forsyth* applied such reasoning in refusing to dismiss strict liability design defect claims in a pharmaceutical context.  *See* 1998 WL 35152135, at *4 ("Lilly is not entitled to summary judgment for Plaintiff's strict liability design defect claim because there is a genuine issue of fact as to whether Lilly provided an adequate warning for Prozac.").

In short, under Hawaii law, the court will not apply a class-based exemption limiting strict liability claims for herbicides to warnings-based claims (as there might be for prescription drugs in other jurisdictions).  Comments j and/or k to Section 402A provide no basis to dismiss Plaintiffs' strict liability design defect claims.

**D.     The Loss of Consortium Claim Remains**

It follows that Kenneth Sheppard's claim for loss of consortium should not be dismissed.  Monsanto's Motion to Dismiss as to this claim was dependent upon dismissal of Plaintiffs' other claims.

///

///

///

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Monsanto's Motion to Dismiss is

DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 29, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Sheppard v. Monsanto Company*, Civ. No. 16-00043 JMS-RLP, Order Denying Defendant's
Motion to Dismiss